# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**April 7, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JACK CRAMPTON,**
**Claimant Below, Petitioner**

**v.) No. 25-ICA-393**      (JCN: 2024028713)

**EXPRESS SERVICES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jack Crampton appeals the September 9, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent Express Services, Inc. ("Express") timely filed a response.[1] Mr. Crampton did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On October 1, 2024, Mr. Crampton presented to Rainelle Medical Center and reported that he had severe pain in his left arm that went all the way down to his hand. Mr. Crampton indicated that he woke up about twelve days prior with shoulder pain radiating down to his wrist and hand and burning and numbness in the left hand. He denied any injury and said he did not know what happened but described that his symptoms came on suddenly and worsened. Mr. Crampton indicated that he moves a lot of boards as he works at a sawmill through Express, a staffing agency. PA-C Stephanie Hamilton assessed Mr. Crampton with radiculopathy of the arm, acute neck pain, left shoulder pain, and left wrist pain. On the same date, Mr. Crampton underwent an x-ray of his left wrist which revealed no acute bony injury and moderate osteoarthritic changes. An x-ray of Mr. Crampton's left shoulder revealed mild degenerative changes with no acute bony abnormality.

Mr. Crampton completed an Employees' and Physicians' Report of Occupational Injury or Disease dated October 10, 2024, in which he stated that he injured his left arm

---

[1] Mr. Crampton is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Express is represented by Jeffrey B. Brannon, Esq.

and left hand on September 20, 2024, while pulling boards at the sawmill. The physicians' section was completed by PA-C Hamilton, who indicated that Mr. Crampton's left shoulder condition was a direct result of a non-occupational condition. She noted that Mr. Crampton has degenerative disease of the left shoulder, and that there was no injury at work.

On October 18, 2024, Mr. Crampton underwent an MRI of the cervical spine, which revealed mild degenerative changes of the cervical spine and significant canal and foraminal narrowing.

By order dated November 4, 2024, the claim administrator approved the request from Rainelle Medical Center for an MRI of the left shoulder for diagnostic purposes. On November 11, 2024, Mr. Crampton underwent the authorized MRI of the left shoulder. The impression was subcortical edema, posterior bony glenoid, which had the appearance of a healed fracture; significant narrowing of the glenohumeral joint posteriorly, posterior subluxation of the humerus relative to the glenoid; small posterior superior labral tear and paralabral cysts; and a small undersurface tear of the infraspinatus tendon. The remainder of the rotator cuff was intact, and the biceps labral anchor complex was intact.

On December 11, 2024, Austin Nabet, M.D., evaluated Mr. Crampton and concluded that Mr. Crampton sustained a work-related injury on September 20, 2024. Dr. Nabet stated that on that date, Mr. Crampton was working in a lumber yard, where he was "pulling on numerous boards, and he experienced neck and left shoulder soreness. This was on a Friday, and when he woke up on Saturday morning, his symptoms had developed, and he had difficulty moving his arm secondary to pain." Dr. Nabet diagnosed Mr. Crampton with a cervical spine strain and left shoulder strain related to a compensable injury. He also concluded that Mr. Crampton had a pre-existing left shoulder moderate glenohumeral arthrosis with rotator cuff tendinopathy, pre-existing cervical spondylosis without radiculopathy, and left cubital tunnel syndrome, which were unrelated to the claim. Dr. Nabet recommended physical therapy for the cervical spine and left shoulder and opined that Mr. Crampton had not reached maximum medical improvement ("MMI") for the compensable injuries. Dr. Nabet noted that Mr. Crampton's subjective complaints were supported by the objective findings in the medical evidence, but that some of his subjective complaints were directly related to noncompensable pathology identified on examination.

By order dated December 19, 2024, the claim administrator held the claim compensable for strain of muscles and tendons of the rotator cuff of the left shoulder, and strain of muscle, fascia, and tendon at the neck level.

On December 23, 2024, Mr. Crampton followed up with PA-C Hamilton for numbness and tingling down his left arm and difficulty gripping things with his left arm. PA-C Hamilton assessed Mr. Crampton with radiculopathy of the arm, disorder of the rotator cuff, and left shoulder pain. By order dated February 5, 2025, the claim

administrator denied the request from Rainelle Medical Center for a referral to Dr. John Tabit, M.D. Mr. Crampton protested this order.

On February 27, 2025, PA-C Hamilton assessed Mr. Crampton with radiculopathy of the arm, left shoulder pain, and disorder of the rotator cuff. PA-C Hamilton said that she could not confirm that Mr. Crampton's injury was work-related, because on Mr. Crampton's first visit in October of 2024, he stated that his injury was not work-related.

On March 24, 2025, the claim administrator issued a corrected order, which denied the claim. The claim administrator indicated that the previous December 19, 2024, order was clearly erroneous, and the result of a mistake or clerical error. Mr. Crampton protested this order. By separate order also dated May 24, 2025, the claim administrator declared an overpayment of temporary total disability ("TTD") benefits and medical benefits. Mr. Crampton protested both orders.

Mr. Crampton was deposed on April 28, 2025, and he testified that prior to September 20, 2024, he did not have any injuries to his left arm, left shoulder, or neck. On September 20, 2024, Mr. Crampton described that he was working at a sawmill, which processes about 6,000 boards a day. Mr. Crampton explained that he had to grab heavy boards as part of the sawmill process. When Mr. Crampton completed his shift on Friday September 20, 2024, he did not experience any symptoms in his left arm, shoulder, or neck. After work on September 20, 2024, Mr. Crampton recalled that he went to Kroger and then home. According to his testimony, he woke up later that night with numbness in his hand and pain. Mr. Crampton recalled that he could not close his hand, and it felt like there was a big spike going through his palm. The Monday following September 20, 2024, Mr. Crampton described that his left elbow, wrist, and shoulder were hurting. However, Mr. Crampton stated that he did not seek medical attention until October 1, 2024, because he did not have medical insurance. Mr. Crampton advised that nothing irregular happened at work on September 20, 2024, and clarified that he did not contend that there was a single traumatic event that happened at work which caused his injury. Mr. Crampton indicated that he filed the instant workers' compensation claim based on his belief that the injury to his neck and left upper extremity were the result of repetitive actions he performed at the sawmill.

On September 9, 2025, the Board affirmed the claim administrator's corrected order, which denied the compensability of Mr. Crampton's claim. The Board found that Mr. Crampton did not meet his burden of establishing that he suffered an injury in the course of and resulting from his employment. Because Mr. Crampton's claim was not compensable, the Board concluded that his protests to the orders denying the referral to Dr. Tabit and declaring an overpayment of TTD benefits and medical benefits were dismissed as moot. Mr. Crampton now appeals the Board's order.

3

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Crampton argues that the Board's decision is clearly wrong because the preponderance of the evidence provides that he sustained an injury to his left extremity and neck in the course of and resulting from his employment. Further, Mr. Crampton asserts that the Board was clearly wrong in finding that Dr. Nabet's report was not reliable and argues that the referral to Dr. Tabit should have been authorized and that his TTD benefits should be reinstated. We disagree.

Three elements must coexist in compensability cases: (1) a personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Barnett v. Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). Further, "[i]n order to establish compensability an employee who suffers a disability in the course of his employment must show by competent evidence that there was a causal connection between such disability and his employment." Syl. Pt. 3, *Deverick v. State Comp. Dir.*, 150 W. Va. 145, 144 S.E.2d 498 (1965).

Here, the Board concluded that Mr. Crampton did not establish that he suffered an injury in the course of and resulting from his employment. The Board noted that PA-C Hamilton concluded that Mr. Crampton's left shoulder condition was a direct result of a non-occupational condition, that he had a degenerative disease of the left shoulder, and that Mr. Crampton told her that there was no injury while at work. Further, the Board found that although Mr. Crampton asserted that the symptoms in his neck and left upper extremity were a result of repetitive actions he performed at work, no medical provider opined that

repetitive actions at work caused the medical conditions of which he complained. Because Mr. Crampton did not establish that he suffered an injury in the course of and resulting from his employment, the Board dismissed as moot his protests to the claim administrator's orders that denied the referral to Dr. Tabit and declared an overpayment.[2]

Further, the Board found that Dr. Nabet's report was unreliable because he was under the mistaken impression that Mr. Crampton's symptoms started while he was at work on September 20, 2024. However, Mr. Crampton testified to the contrary that he did not have any symptoms when he left work on that date, and he first noted symptoms after leaving work for the night. Mr. Crampton argues that Dr. Nabet's report can be interpreted as consistent with his deposition testimony. However, the Board was not clearly wrong when it determined that Dr. Nabet's report was unreliable for this reason.

Upon review, we conclude that the Board was not clearly wrong in finding that the preponderance of the evidence does not support a finding that Mr. Crampton suffered an injury in the course of and resulting from his employment. As the Supreme Court of Appeals has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which rejected Mr. Crampton's claim. Further, we find that the Board was not clearly wrong in dismissing as moot Mr. Crampton's protests to the claim administrator's orders denying the referral to Dr. Tabit and declaring an overpayment of benefits, as Mr. Crampton did not establish that he sustained a compensable injury during the course of or resulting from his employment with Express.

Accordingly, we affirm the Board's September 9, 2025, order.

Affirmed.

**ISSUED:** April 7, 2026

---

[2] "Generally, moot questions are not proper for consideration by this Court. . . moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or property are not properly cognizable by this Court." *State ex rel. Jeanette H. v. Pancake*, 207 W. Va. 154, 159, 529 S.E.2d 865, 870 (2000) (citation omitted).

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White